IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

GREGORY PAUL STEPHENS,      )
            )
      Petitioner,      )
            )
v.            )      Case No. CIV-08-1145-D
            )
JUSTIN JONES,      )
            )
      Respondent.      )

## REPORT AND RECOMMENDATION

Mr. Gregory Stephens is a state inmate requesting issuance of a writ of habeas corpus. The Court should deny the request.

### BACKGROUND

While driving on the streets of Shawnee, Oklahoma, Mr. Stephens and Chad Tramble almost collided. *See* Transcript of Jury Trial Proceedings at pp. 21-22, *State v. Stephens*, Case No. CF-2005-408 (Pott. Co. Dist. Ct. file-stamped Sept. 5, 2006) ("Trial Transcript"). The drivers exchanged heated words, and Mr. Tramble continued toward a park and began playing basketball. *Id.* at pp. 22-23.

A short time later, Mr. Stephens "spe[d] by the park," put his vehicle "in reverse and pull[ed] up into the park." *Id.* at p. 25; *see also id.* at pp. 98-99. The Petitioner began making "racial slurs" and "yelling" at Mr. Tramble. *Id.* at p. 26; *see also id.* at pp. 99-100. He was then seen talking on his cellphone. *See id.* at p. 27; *see also id.* at p. 100. Thereafter, Mr. Stephens exited his vehicle with a gun, and Mr. Tramble and his friends ran. *See id.* at

pp. 27-28; *see also id.* at pp. 101-102.   The Petitioner put the weapon in the vehicle and "came running down toward [Mr. Tramble]."   *Id.* at p. 28; *see also id.* at pp. 101-102.

In an effort to evade Mr. Stephens, Mr. Tramble ran toward the parking lot.   *See id.* at pp. 28-29; *see also id.* at pp. 102-103.   By this time Mr. Stephens' son had arrived at the park, and the Petitioner was yelling at his son to "'[g]rab him'" and "'[g]et him.'"   *Id.* at p. 29; *see also id.* at pp. 103-104.   When Mr. Tramble entered his own car, the Petitioner ran to the passenger side window and Mr. Stephens' son ran to the driver side window.   *See id.* at pp. 29-30; *see also id.* at pp. 104-105.   Both Mr. Stephens and his son started "swinging." *Id.* at p. 30.   Mr. Tramble put his car into reverse, started "to turn [the] car," and the Petitioner's son stabbed Mr. Tramble in the arm.   *Id.* at pp. 30-31.   Mr. Tramble then drove out of the park.   *Id.* at p. 31.

Mr. Tramble's girlfriend, Rochelle Busby, and her friend, Molly Neikes, were arriving at the park as Mr. Tramble was leaving.   *See id.* at pp. 133-35; 164-66.   Ms. Busby saw the attack.   When Mr. Stephens and his son exited the park in their vehicles, Ms. Busby followed them.   *See id.* at pp. 136, 139-40.   Ms. Neikes followed Mr. Tramble and took him to the hospital.   *See id.* at p. 169.

When Mr. Stephens and his son stopped at a local shop, Ms. Busby called the police. *See id.* at pp. 140-42.   While she waited, Ms. Busby saw Mr. Stephens exit his own vehicle and enter his son's truck.   *See id.* at pp. 143-44.   When the police arrived, Mr. Stephens and

his son were arrested.  *See id.* at p. 189.  In the son's truck, police officers found a shotgun wedged between the seats.  *See id.* at pp. 212, 228-29.

In state court, Mr. Stephens was convicted of assault and battery with a dangerous weapon and possession of a firearm, both after prior felony convictions.  *See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody at p. 1 (Oct. 27, 2008) ("Petition").  The Oklahoma Court of Criminal Appeals ("OCCA") affirmed,[1] and the Petitioner unsuccessfully sought post-conviction relief in state court.[2]

The present action followed.  Mr. Stephen alleges ineffective assistance of counsel and trial court errors involving the:

- failure to exclude illegally obtained evidence,

- failure to exclude Mr. Stephens' statements under the doctrine of "spoliation,"

- refusal to sustain a demur on the charge of possession of a firearm after a felony conviction,

- failure to exclude testimony for violation of the rule of sequestration,

- allowance of an evidentiary harpoon,

- illegal enhancement of the sentence, and

- instruction to the jury on aiding and abetting liability.

---

[1]     Summary Opinion at p. 2-6, *Stephens v. State*, Case No. F-2006-628 (Okla. Crim. App. July 13, 2007) ("OCCA Opinion on Direct Appeal").

[2]     Application for Post-Conviction Relief, *Stephens v. State*, Case No. CF-2005-408 (Pott. Co. Dist. Ct. Apr. 7, 2008); *see* Order Denying Application for Post Conviction Relief at pp. 1-3, *State v. Stephens*, Case No. CF-2005-408 (Pott. Co. Dist. Ct. June 13, 2008); Order Affirming Denial of Post-Conviction Relief at pp. 1-3, *Stephens v. State*, Case No. PC-2008-652 (Okla. Crim. App. Sept. 19, 2008) ("OCCA Opinion on Post-Conviction Appeal").

Petition at pp. 5-10.

STANDARD FOR HABEAS RELIEF

The applicable standard turns on how the state appellate court had treated the underlying issue.

When the state appellate court does not address the merits, the federal district court exercises its independent judgment. *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

If the OCCA did rule on the merits, the federal district court bears a "secondary and limited" role. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

For example, a state court's determination of a factual issue triggers a narrow standard of review in two respects. First, the finding is presumptively correct, requiring the challenging party to respond with clear and convincing evidence. *See* Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(e)(1) (2000). Second, when factual allegations are involved, a federal court can grant habeas relief only if the state court had made "an unreasonable determination of the facts in light of the evidence presented." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(2) (2000).

The federal district court also engages in limited scrutiny of legal determinations when the state's highest court has addressed the merits. In these circumstances, the federal court considers only whether the state appeals court's conclusions were "contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1) (2000).

The threshold issue is whether federal law clearly establishes the constitutional protection underlying the Petitioner's claim. *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."), *cert. denied*, __ U.S. __, 129 S. Ct. 1345 (2009). As the Tenth Circuit Court of Appeals has noted:

> [C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id*. at 1016-17 (footnote & citations omitted). For this purpose, Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings." *Id.* at 1015. In the absence of Supreme Court precedents, "a federal habeas court need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of such law." *Id*. at 1017.

If the underlying constitutional right is clearly established, the federal district court must ask whether the state court decision was contrary to Supreme Court precedent. *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008) ("If there is clearly established federal law, we then consider whether the state court decision was contrary to or involved

an unreasonable application of it." (citation omitted)).  These circumstances may exist when the state court had:

- applied a rule that conflicted with governing Supreme Court holdings or

- reached a conclusion different from the Supreme Court on materially indistinguishable facts.

*See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted).

If these circumstances are absent, the federal district court must determine whether the state court decision involved an unreasonable application of Supreme Court precedents. *See supra* pp. 4-5 (quoting *Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir. 2008)). Application of Supreme Court precedent is considered "unreasonable" when the state court unreasonably extends, or refuses to extend, prior decisions.  *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 1345 (2009).  If prior Supreme Court cases do not "clear[ly] answer . . . the question presented," the habeas court cannot regard the application of federal law as unreasonable.  *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 747 (2008) (*per curiam*) (citation omitted).

THE TRIAL COURT'S DENIAL OF THE
MOTION TO SUPPRESS EVIDENCE -
GROUND ONE

In his first ground for relief, Mr. Stephens alleges error in the denial of his motion to suppress evidence collected in an illegal search.  Petition at p. 5; Petitioner's Reply to State's Response to Petition for Writ of Habeas Corpus at p. 1 (Mar. 2, 2009) ("Petitioner's Reply").

The Court should decline to reach the merits of this claim in light of *Stone v. Powell*, 428 U.S. 465 (1976).

"Under *Stone*, habeas relief shall not be granted on the ground that the trial court admitted evidence obtained in violation of the Fourth Amendment[3] despite the judicially-created exclusionary rule, provided that the defendant had an opportunity for full and fair litigation of the Fourth Amendment claim." *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (citing *Stone v. Powell*, 428 U.S. 465, 481-82 (1976)). That opportunity may exist either in the state district or appellate courts.[4]

In the trial court, Mr. Stephens filed a motion to suppress the relevant evidence based on an illegal search. Motion to Suppress with Supporting Brief, *passim*, *State v. Stephens*, Case No. CF-2005-408 (Pott. Co. Dist. Ct. Mar. 21, 2006). The trial court denied the motion,[5] and the OCCA upheld the ruling on appeal.[6] Despite these events, the Petitioner

---

[3]     Rather than invoke the Fourth Amendment, Mr. Stephens has relied on the Fifth, Sixth, and Fourteenth Amendments. Petition at p. 5. Nevertheless, the claim involving the use of evidence from an illegal seizure implicates the Fourth Amendment as a matter of law. *See Washington v. State*, 149 F.3d 1192, 1998 WL 327866, Westlaw op. at 2 (10th Cir. June 18, 1998) (unpublished op.) (rejecting the petitioner's attempt to avoid *Stone* by couching his claim concerning illegally obtained evidence as one involving a deprivation of due process).

[4]     *See Webster v. Attorney General of the State of Oklahoma*, 213 Fed. Appx. 664, 667 (10th Cir. Jan. 12, 2007) (unpublished op.) (citing *Stone v. Powell*, 428 U.S. 465, 494 n.37 (1976)); *see also infra* note 9.

[5]     The parties have not presented an order denying the motion to suppress. But Mr. Stephens' claim implies that the motion had been denied in the state district court.

[6]     OCCA Opinion on Direct Appeal at p. 2; *see infra* p. 9.

argues that he had been denied an opportunity to litigate the Fourth Amendment claim in state court because of the absence of an evidentiary hearing.[7] This theory is meritless.

First, Mr. Stephens' attorney was able to present all of his desired evidence to the state district court.  In the motion to suppress, Mr. Stephens' attorney argued that a warrant was necessary for the vehicle searches because law enforcement had not looked in the cars incident to the arrest or to inventory the contents.  Motion to Suppress with Supporting Brief, *passim*, *State v. Stephens*, Case No. CF-2005-408 (Pott. Co. Dist. Ct. Mar. 21, 2006).  For these arguments, the attorney relied solely on two pages from the preliminary hearing.  *Id.*

The Petitioner argues that the proceedings were not "full and fair" because the state district court did not conduct an evidentiary hearing on the motion to suppress.  *See supra* pp. 7-8.  But the Petitioner's attorney did not request an evidentiary hearing on the motion to suppress.  *See* Motion to Suppress with Supporting Brief, *passim*, *State v. Stephens*, Case No. CF-2005-408 (Pott. Co. Dist. Ct. Mar. 21, 2006).  Instead, the attorney relied on passages from the preliminary hearing, which were already part of the record.  *See supra* p. 8.  With the Petitioner's supporting evidence already before the state district court, the absence of an evidentiary hearing did not undermine the fullness or fairness of Mr. Stephens' opportunity to litigate the Fourth Amendment claim.[8]

---

[7]     Petitioner's Reply at p. 1 ("petitioner was denied a full and fair hearing of [the Fourth Amendment] claim in state court, where no evidentiary hearing was held to develop the factual basis for the claim").

[8]     *See Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) ("the *Stone v. Powell* bar applies despite the trial court's initial decision to deny an evidentiary hearing" (footnote omitted)); *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977) (holding that an opportunity to litigate the Fourth

Even without the proceedings in state district court, Mr. Stephens had a full and fair opportunity to litigate his Fourth Amendment claim in the direct appeal.   In these proceedings, the OCCA stated that it had thoroughly considered "the entire record" and rejected Mr. Stephens' Fourth Amendment claim.  OCCA Opinion on Direct Appeal at p. 2; *see supra* p. 7.  That review independently constituted a "full and fair opportunity to litigate" the Fourth Amendment claim.[9]

The Fourth Amendment claim should be rejected, as *Stone* precludes habeas relief in light of a full and fair opportunity to litigate the constitutional issue in the state trial and appellate courts.

THE TRIAL COURT'S DENIAL OF THE REQUEST TO EXCLUDE
THE PETITIONER'S STATEMENTS - GROUND TWO

In his second proposition, Mr. Stephens alleges that the trial court should have excluded his statements from a police interview.  Petition at p. 5.  The Petitioner invokes both the "doctrine of spoliation" and the right to due process.   *Id.*   These claims should be rejected.

---

Amendment claim was "full and fair," for purposes of *Stone v. Powell*, despite the absence of an evidentiary hearing).

[9]     *See Webster v. Attorney General*, 213 Fed. Appx. 664, 667 (10th Cir. Jan. 12, 2007) (unpublished op.) (although the claimant had not requested suppression of evidence in the trial court, he had a full and fail opportunity to litigate a Fourth Amendment claim because "the OCCA had thoroughly considered the entire record and had cited the applicable case law"); *Molloy v. Scott*, 60 Fed. Appx. 183, 185 (10th Cir. Dec. 12, 2002) (unpublished op.) (stating that the claimant had a full and fair opportunity to litigate his Fourth Amendment claim because "the OCCA [had given] 'thorough consideration' to [the claimant's] arguments and to 'the entire record . . . on appeal, including the original record, transcripts, and briefs'").

I.      Relevant Facts

Detective Kent Borcherding questioned Mr. Stephens and attempted to videotape the interview. *See* Trial Transcript at p. 273. Due to a malfunction, the videotape did not record. Consequently, Detective Borcherding discarded the tape. *See id.* at pp. 274, 304. The witness was allowed to testify concerning his recollection of Mr. Stephens' statements in the interview. *See id.* at p. 276.

II.     Doctrine of Spoliation

On direct appeal, Mr. Stephens complained that the trial court should have suppressed Detective Borcherding's testimony concerning the statements. *See* Appellant's Brief in Chief at pp. 30-32, *Stephens v. State*, Case No. F-2006-628 (Okla. Crim. App. Nov. 8, 2006). According to the Petitioner, the officer's intentional destruction of the videotape constituted "spoliation." *See id.*

The OCCA concluded that Mr. Stephens was not entitled to relief under this theory because the "[spoliation] doctrine [was] civil in nature, inapplicable in [Oklahoma] criminal cases." OCCA Opinion on Direct Appeal at p. 3. The federal district court is bound by the OCCA's interpretation of Oklahoma law,[10] and the Petitioner is not entitled to habeas relief based on the state trial court's refusal to suppress the evidence under the spoliation doctrine.

---

[10]     *See Hawkins v. Mullin*, 291 F.3d 658, 662 (10th Cir. 2002).

III.    Due Process

In the petition, Mr. Stephens cites the Fourteenth Amendment and alleges deprivation of due process in the decision to allow introduction of evidence about his statements. Petition at p. 5.  In doing so, Mr. Stephens incorporates language originating in his attorney's appeal brief.  *Id.*  There the attorney had relied on the fact that the detective had thrown the tape away, "negligent[ly] or intentional[ly]" destroying evidence.  Appellant's Brief in Chief at p. 22, *Stephens v. State*, Case No. F-2006-628 (Okla. Crim. App. Nov. 8, 2006); *see* Petition at p. 29 (recitation of the same allegations).  In the state court appeal, the OCCA did not directly address whether destruction of the tape would have constituted denial of due process.  *See* OCCA Opinion on Direct Appeal at p. 3.  But even if the federal district court were to exercise its independent judgment, it should reject the claim because the tape may not have been exculpatory and the government had not acted in bad faith.

Because the recording allegedly malfunctioned, its contents are unknown.  In these circumstances, the failure to preserve the tape constituted a due process violation only if the destruction involved bad faith.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").  The Petitioner bears the burden to show bad faith.  *See United States v. Donaldson*, 915 F.2d 612, 614 (10th Cir. 1990) ("it is the defendant who bears the burden of showing bad faith under *Youngblood*" (citation omitted)).

11

Mr. Stephens has not alleged or presented evidence of bad faith.[11]  In the absence of

bad faith, the failure to preserve a recording of an interview does not involve a due process

violation.  *See United States v. Gardner*, 244 F.3d 784, 788-89 (10th Cir. 2001) (holding that

negligent loss of a tape had not deprived the defendant of due process when an officer

testified about the interview).

### THE TRIAL COURT'S DECISION NOT TO REMAND FOR A SECOND PRELIMINARY HEARING - GROUND THREE

After the preliminary hearing, the State filed an amended information to include the

charge of possession of a firearm after a prior felony conviction.  Appellant's Brief in Chief

at pp. 37-38, *Stephens v. State*, Case No. F-2006-628 (Okla. Crim. App. Nov. 8, 2006).  Mr.

Stephens sought a second preliminary hearing, and the state court refused.  *See* Trial

Transcript at pp. 270-71.[12]  In his third ground for relief, the Petitioner argues that the lack

of a second preliminary hearing had violated his right to due process.  Petition at p. 5.

According to the OCCA, the trial court's decision to decline a second preliminary

hearing did not violate Oklahoma law[13] because the underlying evidence had already been

---

[11]    At trial, the Petitioner's attorney argued that destruction of the tape was "either negligent or intentional."  Trial Transcript at p. 264.  And in the Petitioner's appeal brief, Mr. Stephens referred to sanctions for "negligent" spoliation of evidence.  Appellant's Brief in Chief at p. 32, *Stephens v. State*, Case No. F-2006-628 (Okla. Crim. App. Nov. 8, 2006).

[12]    The Respondent did not provide the federal district court with a copy of the amended information, the Petitioner's motion for a remand, or the state court's order.  But these documents are not necessary for a ruling on the habeas petition.

[13]    *See* Okla. Const. art. 2, § 17 ("No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate . . . .").

presented at the first preliminary hearing.  OCCA Opinion on Direct Appeal at pp. 3-4.  The

federal district court must respect the OCCA's decision regarding the application of

Oklahoma law.  *See supra* p. 10.

Mr. Stephens also lacks a federal constitutional right to a preliminary hearing.[14]

Because neither the federal constitution nor Oklahoma law was violated, the Court

should deny habeas relief based on the lack of a second preliminary hearing.

THE TRIAL COURT'S DENIAL OF A
DEMURRER - GROUNDS FOUR AND EIGHT

In his fourth ground for relief, Mr. Stephens claims that the trial court should have

granted a demurrer on the charge of possession of a firearm after a felony conviction.

Petition at p. 6.  According to the Petitioner, insufficient evidence existed for the jury to

regard possession of the Mossberg shotgun[15] as illegal under Oklahoma law.  *Id.*  Mr.

Stephens repeats this allegation in his eighth ground for relief, emphasizing that the trial

court had erred when it characterized the Mossberg shotgun as "sawed-off."  *Id.* at p. 8.

---

[14]     *See Snow v. State of Oklahoma*, 489 F.2d 278, 279 (10th Cir. 1973) (*per curiam*) ("There is
no federal constitutional right to a preliminary hearing." (citations omitted)); *see also United States
v. Aranda-Hernandez*, 95 F.3d 977, 979-80 (10th Cir. 1996) ("Although the right to a preliminary
examination is embodied in the United States Code and the Rules of Criminal Procedure, the right
is not constitutional." (citation omitted)).

[15]     In his petition, Mr. Stephens mentions both the Mossberg shotgun and the "SKS Assault
Rifle."  Petition at p. 6.  The trial court granted the demurrer on the charge involving the SKS
weapon.  *See* Trial Transcript at p. 335.

On direct appeal, the OCCA upheld the denial of a demurrer on the charge involving possession of the Mossberg shotgun.  OCCA Opinion on Direct Appeal at p. 7; *see infra* note 20.  This conclusion was reasonable and prevents habeas relief.

When the sufficiency of evidence is challenged in a habeas action, the federal district court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted).  And the state court obtains additional deference when it decides the sufficiency of evidence.[16]  Thus, the dispositive question "'is whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard.'"[17] *Id.* (citation omitted).

As of August 9, 2005,[18] Oklahoma law[19] provided:

---

[16]    *See Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) ("the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) 'adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions'" (citation omitted)), *cert. denied*, __ U.S. __, 128 S. Ct. 2875 (2008).

[17]    The OCCA cited *Pierce v. State*, 878 P.2d 369, 374 (Okla. Crim. App. 1994).  OCCA Opinion on Direct Appeal at p. 4.  The *Pierce* court had applied the standard articulated in *Jackson*. *Pierce v. State*, 878 P.2d 369, 374 (Okla. Crim. App. 1994).

[18]    Mr. Stephens is accused of possessing the firearm on August 9, 2005.  *See* Trial Transcript at pp. 340-41 (reading of the amended information).  Twenty-three days later, the Oklahoma legislature amended the statute governing possession of a firearm after a prior felony conviction. *See* Okla. Stat. tit. 21 § 1283 (2005 supp.).

[19]    The standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).  Therefore, the Court must consider Oklahoma law in connection with the habeas claim.

14

> [I]t shall be unlawful for any person convicted of any felony in any court of this state . . . to have in his or her possession or under his or her immediate control, or in any vehicle . . . in which the person is riding as a passenger . . . any . . . pistol, imitation or homemade pistol, machine gun, sawed-off shotgun or rifle, or any other dangerous or deadly firearm which could be easily concealed on the person, in personal effects or in an automobile.

Okla. Stat. tit. 21 § 1283(A) (2002 supp.).

Mr. Stephens challenges the sufficiency of the evidence for the jury to find that the Mossberg shotgun had been "sawed-off." Petition at pp. 6, 8, 37-38. But this challenge is irrelevant in light of the testimony that the shotgun could easily be concealed in the vehicle.[20]

---

[20] In a reply brief, Mr. Stephens argues:

- "Petitioner was specifically charged under the clause which makes it illegal for a person previously convicted of a felony to carry a 'sawed-off' shotgun. He was <u>not</u> charged with the subsequent option, 'or any other dangerous or deadly firearm which could be easily concealed . . . in an automobile'" and

- the OCCA upheld the conviction "based on the erroneous 'sawed-off' finding."

Petitioner's Reply at p. 3 (emphasis in original). These statements are not accurate.

The amended information stated that Mr. Stephens had been charged with "[p]ossession of firearms after conviction . . . [of] a felony . . . by knowingly having in his possession and within his immediate control a Mossberg 12-gauge shotgun with pistol grip located between the seats on the passenger side . . . ." Trial Transcript at pp. 340-41. The amended information did not refer to the charge as one involving a "sawed-off shotgun." *See id.* at p. 335.

On appeal, the OCCA held that the evidence was sufficient "to support a finding that possession of the Mossberg was illegal under 21 O.S. 2001, § 1283(A) & (G)." OCCA Opinion on Direct Appeal at p. 4 (citation & footnote omitted). In a footnote, the court referred to the weapon as a "sawed off shotgun," but this description did not curtail the charge or the holding on appeal. *Id.* at pp. 4-5 n.1.

For example, Officer Patrick Vance testified that when he had walked up to the vehicle, he could "see the grip of a - - what appeared to be the grip of a gun sticking up from between the seat and the center console." Trial Transcript at p. 228. The officer could only see "a couple of inches" of the grip. *Id.* at p. 229. Officer Vance removed the item, which was a "short shotgun." *Id.* at pp. 229, 236.

Based on the officer's testimony, a rational trier of fact could have found beyond a reasonable doubt that Mr. Stephens possessed a shotgun easily concealed in the automobile. Because the Petitioner was a convicted felon, this finding would have supported a conviction under Okla. Stat. tit. 21 § 1283(A) (2002 supp.). Consequently, the OCCA reasonably determined that sufficient evidence had existed on this charge.

## THE ALLEGED INTRODUCTION OF AN
## EVIDENTIARY HARPOON - GROUND FIVE

According to the Petitioner, his constitutional rights were violated when Officer Mohr testified that Mr. Stephens had been "shouting" in the police station that "he was going to 'kill us.'" Petition at pp. 6, 24 (citing Trial Transcript at p. 194). Mr. Stephens complains that this comment had involved an "evidentiary harpoon." *Id.* at p. 6.

On appeal, the OCCA rejected this claim on two grounds. First, the appellate court explained that the testimony was not "the intentional introduction of evidence of other crimes, but merely a response to the prosecutor's question regarding what occurred at the police station prior to [Mr. Stephens'] interview." OCCA Opinion on Direct Appeal at p. 5. Second, the OCCA explained that the officer's comment was not prejudicial because "[o]ther

16

officers had already described [the Petitioner] as aggressive and threatening so any further testimony in that manner was not a surprise.  [Further,] [a]ny evidence of another crime was apparent only to defense counsel." *Id.*

"[A]n 'evidentiary harpoon' is a metaphorical term used to describe an attempt by a government witness to deliberately offer inadmissible testimony for the purpose of prejudicing the defendant." *United States v. Cavely*, 318 F.3d 987, 996 n.2 (10th Cir. 2003) (citation omitted).  In Oklahoma, an "evidentiary harpoon" exists only when the witness voluntarily "inject[s] information indicating other crimes." *Bruner v. State*, 612 P.2d 1375, 1378-79 (Okla. Crim. App. 1980).

As the OCCA noted, Officer Mohr did not "voluntarily" inject information indicating other crimes.  *See supra* pp. 16-17.  Instead, the witness was asked to describe Mr. Stephens' temperament before and after his arrest.  *See* Trial Transcript at pp. 192-93.  The State sought this information to "corroborate the demeanor of the defendant as testified to by the victim [and another witness] that the defendant was acting in a wild way." *Id.* at p. 195. Consequently, the testimony was not an "evidentiary harpoon" under Oklahoma law.  *See Powell v. State*, 995 P.2d 510, 533 (Okla. Crim. App. 2000) (stating that an officer's testimony was not an evidentiary harpoon when it was "responsive to a legitimate question").

Second, even if the testimony had constituted an evidentiary harpoon, the transgression would implicate the Fourteenth Amendment's Due Process Clause only if the

evidence was so grossly prejudicial that it fatally infected the trial and resulted in a denial of fundamental fairness. *See Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002).[21]

Mr. Stephens cannot show that the evidence was grossly prejudicial. As the OCCA noted, other testimony indicated that the Petitioner had been uncooperative and aggressive with police officers.[22] In light of this testimony, Officer Mohr's statement concerning the threat was not sufficiently prejudicial to prevent a fundamentally fair trial. *See Smith v. Gibson*, 197 F.3d 454, 460 (10th Cir. 1999) (rejecting a habeas claim involving an alleged "evidentiary harpoon" because the testimony did not render the trial fundamentally unfair).

## THE SENTENCE ENHANCEMENT - GROUND SIX

The trial court enhanced Mr. Stephens' sentence for assault and battery with a dangerous weapon. *See* Petition at p. 6. The Petitioner claims that the prior felony relied upon for the enhancement, Case No. CF-86-362, was improper because it had been more than

---

[21]     The *Revilla* court stated:

> When, as in this case, no particular constitutional guarantees are implicated, such evidentiary objections merely raise questions of state law and, therefore, are cognizable on habeas only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process."

*Revilla v. Gibson*, 283 F.3d at 1212 (citation omitted).

[22]     *See supra* pp. 16-17; *see also* Trial Transcript at p. 194 (testimony that while at the police station, the Petitioner was "very, very angry" and was "kicking and flailing"), pp. 210-11 (testimony suggesting that Mr. Stephens was "agitated, aggressive" and resisting arrest), pp. 211-12 (testimony that the Petitioner was "kicking," "screaming," and "yelling" inside the police vehicle).

ten years old.  *Id.*[23]  On independent review,[24] the Court should reject the habeas claim

because: (1) it involves an alleged error under state law rather than the federal constitution;

and (2) the enhancement was proper under Oklahoma law.[25]

"The question whether Oklahoma erred in enhancing petitioner's sentence with stale

convictions, pursuant to Okla. Stat. Ann. tit. 21, § 51(B), is one of state law for which federal

habeas corpus relief ordinarily does not lie."[26]

---

[23]    The Respondent apparently misunderstood the Petitioner's argument.  The response brief states: "The Petitioner's argument is that there is more than a ten year lapse of time between the dates of the Judgements and Sentences in CRF-89-50 and CRF-98-416."  Response to Petition for Writ of Habeas Corpus at p. 31 (Jan. 20, 2009).  But in the habeas petition, Mr. Stephens had referred to Case No. CF-86-362 rather than Case No. CF-89-50 or CF-98-416.  In Ground Six, Mr. Stephens stated:

> Petitioner's sentence on Count 1 is not authorized by law, where the prior felony conviction in CF-86-362 was no longer eligible as enhancer, having been discharged more than ten (10) years prior to commission of the instant offense, depriving a fair trial and due process per 5th, 6th, & 14th Amends.

Petition at p. 6.

[24]    *See supra* p. 4.

[25]    The Respondent urges application of a procedural bar.  *See* Response to Petition for Writ of Habeas Corpus at pp. 21-24 (Jan. 20, 2009) (arguing for procedural bar on the Petitioner's sixth, seventh, and ninth claims for relief).  However, the Court need not address the issue of procedural default because the habeas claim is invalid on the merits.  *See Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (*per curiam*) (declining to address issues involving procedural default "[i]n the interest of judicial economy" "'because the case may be more easily and succinctly affirmed on the merits'" (citations omitted)).

[26]    *Johnson v. Cody*, 77 F.3d 492, 1996 WL 78324, Westlaw op. at 2 (10th Cir. Feb. 23, 1996) (unpublished op.) (citation omitted); *see also Turner v. Kaiser*, 173 F.3d 864, 1999 WL 149770, Westlaw op. at 1 (10th Cir. Mar. 19, 1999) (unpublished op.) ("Issues of enhancement are matters of state law and are not cognizable in a federal habeas proceeding." (citations omitted)).

The claim would also fail even under Oklahoma law because Case No. CF-86-362 could be used for enhancement.

The parties stipulated that Mr. Stephens had been convicted of felony crimes in Case Nos. CF-86-362, CF-89-50, and CF-98-416. *See* Trial Transcript at pp. 345-46. With this stipulation, the prosecution used the felony conviction in Case No. CF-98-416 to prove an element of the crime of possession of a firearm after a prior felony conviction. *See id.* at p. 346. Case Nos. CF-86-362 and CF-89-50 were then used to enhance the Petitioner's sentences. *See id.* Mr. Stephens complains about the use of Case No. CF-86-362 for enhancement. *See supra* pp. 18-19.

Oklahoma law allows enhancement with a prior conviction when a new crime is committed "within ten . . . years of the date following the completion of the execution of the sentence." Okla. Stat. tit. 21 § 51.1(A) (2002 supp.). Ordinarily, once the ten-year period elapses, the conviction can no longer be used for enhancement purposes. *See* Okla. Stat. tit. 21 § 52.1 (2002 supp.). However, a stale conviction can be revitalized for purposes of enhancement if during the ten-year period following conviction, the defendant commits another felony.[27]

Mr. Stephens began to serve his two concurrent sentences in Case No. CF-86-362 on February 20, 1987. *See* Trial Transcript, State's Exh. No. 10 at p. 1. Because the sentences

---

[27]     *See* Okla. Stat. tit. 21 § 52.1 (2002 supp.); *see also Ruth v. State*, 966 P.2d 799, 801 (Okla. Crim. App. 1998) (for purposes of sentence enhancement, "felony convictions . . . may be used to revitalize prior offenses that occurred prior to a period of ten years since the completion of the sentence imposed").

were for only one year, Mr. Stephens completed the terms more than ten years before the conduct underlying the habeas action.[28]  But within three years of the conviction in Case No. CF-86-362, Mr. Stephens obtained another felony conviction in Case No. CF-89-50.  *See* Trial Transcript at p. 345 (stipulation of a felony conviction on June 14, 1989, in Case No. CF-89-50); Trial Transcript, State's Exh. No. 9 (judgment in Case No. CF-89-50).  The sentence in Case No. CF-89-50 was for one year.  *See* Trial Transcript, State's Exh. No. 9.  Thus, Mr. Stephens apparently completed this sentence on June 14, 1990.  Less than ten years later, Mr. Stephens was convicted of another felony in Case No. CF-98-416.  *See* Trial Transcript, State's Exh. No. 8 (judgment in Case No. CF-98-416 for a felony conviction on September 29, 1999).[29]

The present habeas action involves a conviction for conduct taking place on August 9, 2005.  *See* Trial Transcript at pp. 5-6 (reading of the amended information).  This conduct took place within ten years of Mr. Stephens' discharge of the sentence in Case No. CF-98-416.  *See supra* p. 21.  In turn, that conviction had involved conduct taking place within ten years of the preceding conviction in Case No. CF-89-50.  *See supra* p. 21.  And the

---

[28]     In the habeas petition, Mr. Stephens alleges that he had discharged this sentence on February 18, 1988.  Petition at p. 37.

[29]     The trial court ruled that Case No. CF-98-416 could not be used for enhancement because the case was already being used to prove the element of a prior felony conviction.  *See* Trial Transcript at p. 338.  Regardless, that conviction can be used to revitalize the otherwise stale conviction in Case No. CF-86-362.  *See Ruth v. State*, 966 P.2d 799, 801 (Okla. Crim. App. 1998) ("[T]he fact that a crime may not be used to enhance a sentence does not prohibit it from being used to revitalize older convictions.").

conviction in Case No. CF-89-50 had involved conduct within ten years of the conviction in Case No. CF-86-362. *See supra* p. 21.

In light of the continuous revitalization of the conviction in Case No. CF-86-362, it could be used as a basis for enhancement of the sentence underlying the present action notwithstanding the passage of roughly eighteen years.[30]

A similar situation arose in *Mansfield v. Champion*, 992 F.2d 1098 (10th Cir. 1993). In that habeas action, one underlying issue involved the eligibility of two 1964 convictions in Oklahoma to enhance a sentence imposed in 1984 for a crime committed in that year. *See*

---

[30]     One could interpret Oklahoma law to allow use of Case No. CF-86-362 for enhancement as long as another felony conviction had taken place within ten years, regardless of whether the subsequent-conviction became stale. *See Johnson v. Cody*, 77 F.3d 492, 1996 WL 78324, Westlaw op. at 2 (10th Cir. Feb. 23, 1996) (unpublished op.) (applying Oklahoma law) ("If a defendant's most recent conviction falls within [ten years of the completion of the execution of the sentence], it revitalizes any prior convictions as well."). Mr. Stephens takes a contrary view, arguing that Case No. CF-86-362 could not be used for enhancement if it had been revitalized with a conviction that became stale. Brief in Support on Appeal from Denial of Post Conviction Relief at p. 5, *Stephens v. State*, Case No. PC-2008-652 (Okla. Crim. App. Aug. 8, 2008). He presented this argument in the post-conviction appeal, stating:

> One interpretation regarding eligibility of prior convictions as enhancers is that any felony conviction whose sentence was completed within ten years prior to commission of the instant offense revitalizes <u>all</u> prior convictions, regardless of their age. However, another interpretation is that the prior convictions must link one to another like a chain, with completion of the sentence for each falling within ten years of the commission of the next. Under this interpretation, any period of ten years or more free of commission of a subsequent felony forever breaks the chain, isolating all convictions before it from future use.

*Id.* (emphasis in original). The Court may assume *arguendo* that the Petitioner's interpretation of the state statute is correct. As discussed in the text, Mr. Stephens' felony convictions in Case Nos. CF-86-362, CF-89-50, CF-98-416, and CF-2005-408 did "link one to another like a chain, with completion of the sentence for each falling within ten years of the commission of the next." *Id.*; *see supra* pp. 20-22.

*Mansfield v. Champion*, 992 F.2d at 1098-99, 1103, 1104 n.10.  The petitioner had completed service of the 1964 sentences in 1969.  *See id.* at 1103-1104.  Because roughly fifteen years had passed, the 1964 convictions were considered "stale and by themselves could not enhance [the] 1984 conviction."  *Id.* at 1104 (footnote omitted).  But within the fifteen-year period, the petitioner obtained another felony conviction in 1975.  *See id.* at 1104.  That conviction had been imposed less than ten years before the petitioner's 1984 crime.  *See id.* The *Mansfield* court held that this conviction had served to revitalize the 1964 convictions, which then could also be used to enhance the 1984 sentence.  *Id.*

*Mansfield v. Champion* would compel rejection of Mr. Stephens' claim even if a violation of state law could justify habeas relief.  Like the 1964 convictions in *Mansfield*, the sentence in Case No. CF-86-362 ended more than ten years before the crime involved in the sentence enhancement.  *See supra* pp. 20-21.  But in *Mansfield* the 1964 sentences were revitalized by the 1975 conviction, just as the conviction in Case No. CF-86-362 was revitalized by the convictions in Case Nos. CF-89-50 and CF-98-416.  *See supra* pp. 20-22. Under Oklahoma law, as interpreted in *Mansfield*, the original conviction in Case No. CF-86-362 could be used to enhance the most recent sentence.

### THE TRIAL COURT'S DECISION NOT TO EXCLUDE TESTIMONY BASED ON VIOLATION OF THE RULE OF SEQUESTRATION - GROUND SEVEN

In his seventh claim, Mr. Stephens argues that the trial court should have excluded testimony by Rochelle Busby, Sedrick McClain, and Molly Niekes based on a violation of

the rule of sequestration.  Petition at p. 7.  The federal district court should deny habeas relief on this ground.

At the beginning of the trial, defense counsel invoked the rule of sequestration.  *See* Trial Transcript at p. 20.  Accordingly, the trial court instructed prospective witnesses to remain outside the courtroom and said that witnesses could not discuss their testimony with one another.  *Id.*  Thereafter, defense counsel accused Chad Tramble, the first witness in the trial, of speaking with Rochelle Busby, Sedrick McClain, and Molly Niekes during a recess.  *See id.* at p. 74.  As a sanction, defense counsel sought exclusion of these witnesses' testimony.  *See id.* at p. 93.

The trial court agreed that a violation had occurred, but declined to invoke such a "draconian" sanction.  *Id.*  The trial court suggested partial exclusion of the testimony, but defense counsel declined that remedy "from a strategic standpoint."  *Id.* at pp. 94-95. Ultimately, no sanction was imposed.

Mr. Stephens believes that the constitution was violated by the trial court's decision not to exclude the entirety of the witnesses' testimony.  The Petitioner is mistaken.

The rule of sequestration is based on Oklahoma law rather than the United States Constitution.[31]  As a result, the decision to allow the testimony would not ordinarily justify

---

[31]     *See* Okla. Stat. tit. 12 § 2615 (2003 supp.); *see also Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988) ("A refusal to exclude ('separate') witnesses until they testify is not a denial of due process.").

habeas relief.[32]  If the ruling created sufficient prejudice for Mr. Stephens, the Fourteenth

Amendment Due Process Clause could conceivably be implicated.  *See supra* pp. 17-18.

Here, however, the Petitioner cannot show a deprivation of due process.

In his opening statement, defense counsel told the jury that Mr. Tramble would testify

that he was driving "doughnuts" in the parking lot and bleeding all over his car.  *See* Trial

Transcript at p. 17.   Defense counsel suggested a lack of evidence to support these

statements.  *See id.*[33]  At trial, Mr. Tramble denied that he had driven "doughnuts" in the

parking lot.  *See id.* at p. 68.  The witness did claim that there was blood inside his car.  *See*

*id.* at p. 69.

At an *in camera* hearing, defense counsel testified that Chad Tramble had told the

remaining witnesses that:

---

[32]     *See Ransom v. Roberts*, 989 F.2d 508, 1993 WL 88289, Westlaw op. at 1 (10th Cir. Mar. 22, 1993) (unpublished op.) ("the federal court system lacks the authority to rectify nonconstitutional defects such as the alleged violation of the sequestration order"); *accord Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (holding that the state trial court's decision not to exclude testimony by a witness who had allegedly violated a sequestration order would "not of itself raise federal constitutional questions cognizable in habeas corpus" (citations omitted)).

[33]     Defense counsel told the jury:

> Now, the evidence, according to Mr. Chad Tramble, . . . he's going backwards in the parking lot screeching around doing doughnuts, trying to sling [the Petitioner] off, while this kid is stabbing him in the arm.  And he says he's bleeding all over the place in his one-of-a-kind Cutlass.

> The evidence will be that this one-of-a-kind Cutlass ain't full of blood.  . . . This one-of-a-kind Cutlass didn't leave any tire marks in the parking lot where he supposedly was doing these doughnuts. . . .

Trial Transcript at pp. 16-17.

- "the lawyer asked me about doing doughnuts,"

- "he was trying to get me to say I was doing doughnuts in the parking lot," and

- "he's going to try to get you to say there wasn't any blood in the car."

*Id.* at pp. 83, 94.  Testimony from these witnesses about the "doughnuts" and blood was not grossly prejudicial.

Defense counsel apparently expected Mr. Tramble to say that he had driven in circles in the parking lot.  *See supra* p. 25.  Mr. Tramble did not testify in this manner.  *See supra* p. 25.  But the attorney apparently did not believe Mr. Tramble had been driving in circles.[34] When Mr. Tramble denied that he had driven "doughnuts" in the parking lot, this line of impeachment became irrelevant.  Thus, the determination of guilt could not have been affected by testimony of other witnesses - such as Rochelle Busby, Sedrick McClain, and Molly Niekes - about whether Mr. Tramble had been driving "doughnuts" in the parking lot. If Chad Tramble had told other witnesses about the questioning, one would be hard-pressed to imagine how this knowledge could have affected the outcome.

According to Mr. Stephens' trial attorney, the other witnesses were also told of his attempts to elicit an admission that there had not been any blood in Chad Tramble's car.  *See supra* pp. 25-26.  The existence or non-existence of blood in the car could have affected the jury's perception of Mr. Tramble's account.  Consequently, the judge suggested a remedy

---

[34]     *See supra* p. 25; *see also* Trial Transcript at p. 17 (defense counsel's statement that Mr. Tramble "supposedly was doing these doughnuts"); *see generally Heideman v. Kelsey*, 131 N.E. 2d 531, 533 (Ill. 1956) ("The word 'supposedly' is synonymous and equivalent to the words 'purportedly' and 'allegedly.'").

which would have prevented any testimony by Rochelle Busby, Molly Neikes, or Sedrick McClain about the presence of blood in the car: "Well, I think – how much the remedy be if we just excluded – I don't know if these witnesses are going to testify about that or not. But how would it be if we just excluded further testimony about that from the witnesses?" Trial Transcript at p. 94. Mr. Stephens' attorney declined this remedy. *See id.* at pp. 94-95; *see also supra* p. 24.

The trial judge accepted defense counsel's version and suggested exclusion of testimony on the subject-matter allegedly discussed between the witnesses. *See supra* pp. 24, 27. In these circumstances, the judge's handling of the issue did not deprive Mr. Stephens of a fundamentally fair trial and the Court should reject the due process claim.[35]

### THE JURY INSTRUCTIONS ON AIDING
### AND ABETTING LIABILITY - GROUND NINE

In ground nine, Mr. Stephens alleges that the trial court should not have instructed the jury on an "aiding and abetting" theory because he had instead been charged with acting "cojointly." Petition at p. 8. The Petitioner's theory is misguided, and the Court should reject it on independent review. *See supra* p. 4.

---

[35]     *See Ashker v. Class*, 152 F.3d 863, 873 (8th Cir. 1998) (upholding the denial of habeas relief because the prosecutor's failure to ensure sequestration of a witness was "not so prejudicial as to call into question the fundamental fairness of [the petitioner's] state trial"); *Smith v. Wainwright*, 741 F.2d 1248, 1258 (11th Cir. 1984) (upholding the denial of habeas relief on grounds that violation of a state district court's sequestration rule had not rendered the trial fundamentally unfair).

Errors relating to jury instructions in a state criminal trial do not support federal habeas relief "'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citation omitted). Thus, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citation omitted). The Petitioner bears a heavy burden to establish constitutional error based on an erroneous jury instruction. *See Nguyen v. Reynolds*, 131 F.3d at 1357.

Mr. Stephens cannot carry his burden. The Petitioner seems to distinguish between "conjoint" conduct and action considered to be aiding and abetting. But this distinction is illusory.

In Count One of the amended information, the State alleged that Mr. Stephens had committed assault and battery with a dangerous weapon, "acting conjointly with Gregory Chase Stephens." Trial Transcript at pp. 5-6. In the context of assault and battery, the term "conjointly" is not legally defined in Oklahoma.[36] In ordinary usage, the primary definition of the term "conjoint" is "joined together; united; combined; associated." Webster's New Universal Unabridged Dictionary 430 (1996). In Oklahoma, the courts have loosely equated reference to "conjoint" conduct with legal principles creating joint liability, such as aiding

---

[36]    For the crime of robbery, the term "conjoint" is defined in Oklahoma law. *See* Okla. Stat. tit. 21 § 800 (2001) (referring to "conjoint robbery"); *see also* OUJI-CR 4-143 (2d) - Committee Comments ("Conjoint robbery, created by section 800, is robbery as defined by section 791, except that two or more persons must participate in the commission of the crime." (citations omitted)).

and abetting in the commission of an offense.  For example, in upholding a conviction for grand larceny, the OCCA held that the evidence had sufficed to prove that "all [were] acting conjointly in the commission of a felony" and that the defendant could be "punished as a principal" because he had "aided and abetted" in the offense.  *Battles v. State*, 459 P.2d 623, 627 (Okla. Crim. App. 1969).

In Instruction No. 14, the trial court referred to the charge involving "conjoint" conduct with Gregory Chance Stephens.  Response to Petition for Writ of Habeas Corpus, Exh. 11 (Jan. 20, 2009).  But the trial court still had to define the elements of the charge involving conjoint conduct.

Under Oklahoma law, one is treated as a principal if he aids and abets in the commission of an offense.  *See Williams v. State*, 188 P.3d 208, 226 (Okla. Crim. App. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 1529 (2009).  Thus, the trial court informed the jury that Mr. Stephens could incur criminal liability for his "conjoint" conduct if he had aided and abetted in the assault and battery.  *See* Response to Petition for Writ of Habeas Corpus, Exh. 11, Nos. 19-21 (Jan. 20, 2009).  This instruction did not constitute error under Oklahoma law.

## THE EFFECTIVENESS OF COUNSEL - GROUNDS TEN AND ELEVEN

In Grounds Ten and Eleven, Mr. Stephens alleges ineffective assistance of counsel at trial and on appeal.  Petition at pp. 9-10.

According to the Petitioner, his attorney was ineffective at trial for:

- stipulation to the use of Case No. CF-86-362 for enhancement of the sentence,

- inadequate litigation of "the issue of the violation of the Rule of Sequestration,"

- failure to present the manufacturer's specifications of the Mossberg shotgun to prove that it had not been "sawed-off," and

- failure to object to the jury instruction concerning "aiding and abetting" liability.

*Id.* at pp. 9, 37-38.  On independent review,[37] the Court should reject Mr. Stephens' claim of ineffective assistance of trial counsel.

The Petitioner also accuses the same attorney of ineffectiveness on appeal for failure to assert ineffective assistance at trial or errors in the state district court's handling of the issues involving enhancement, enforcement of the rule of sequestration, the charge involving possession of the Mossberg shotgun, or the jury instruction on aiding and abetting liability. Petition at pp. 7-9, 38.  The OCCA rejected the claims of ineffective assistance on appeal,[38] and that disposition was reasonable under clearly established Supreme Court precedents and the evidence.

I.    <u>Standard for Ineffective Assistance of Counsel</u>

To establish ineffective assistance of counsel, a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  "[P]rejudice" involves "a reasonable probability

---

[37]    *See supra* p. 4.

[38]    OCCA Opinion on Post-Conviction Appeal at p. 2.

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

II.     Alleged Ineffectiveness of Trial Counsel

Mr. Stephens' claim concerning a failure to properly litigate the issue concerning violation of the rule of sequestration is conclusory and does not support habeas relief.  On the remaining claims, the Petitioner cannot demonstrate that defense counsel's representation was prejudicial.

A.     Claim Concerning the Attorney's Handling of Issues Involving the Rule of Sequestration

In his petition, Mr. Stephens offers little explanation concerning his claim that defense counsel had failed to properly litigate the issue concerning violation of the rule of sequestration.  In his reply brief, the Petitioner clarifies that he is not claiming that defense counsel should have sought a mistrial.  Petitioner's Reply at p. 7.  Instead, Mr. Stephens believes that had defense counsel "pressed the issue properly," the trial court would have excluded the entirety of the witnesses' testimony.  *Id.*

Mr. Stephens does not explain his statement that his attorney should have "pressed the issue properly."  Without identification of the arguments or theories that the Petitioner thinks should have been employed, the federal district court cannot assess their validity or the potential prejudice.[39]

---

[39]     *See*, *e.g.*, *United States v. Fisher*, 38 F.3d 1144, 1146-47 (10th Cir. 1994) (rejecting habeas claims involving ineffective assistance of counsel on grounds that they had been "conclusory in nature and without supporting factual averments").

B.    Claim Concerning Stipulation to the Use of a Former Conviction

In part, Mr. Stephens alleges that trial counsel had improperly "stipulated to the use of prior conviction CF-86-362 for enhancement of Ct(1)."  Petition at p. 37.  But defense counsel did object to use of the conviction in Case No. CF-86-362.  The trial judge asked the attorney: "Now, before the information is read to the jury on this particular portion of the trial, Mr. Gassaway, do you have any objection to these felonies that have been outlined by the state?"  Trial Transcript at p. 331.  The attorney responded:

> Yes, I do have objections, your Honor.  It is our position that the CF-86-362 is stale.  Further, that the judgment and sentences I have been provided with regard to each of those counts are not judgment and sentences for larceny of an automobile but are, in truth and fact, judgment and sentences for attempts.

*Id.*  The attorney stipulated only to the fact that Mr. Stephens was the person who had been convicted in Case No. CF-86-362.  *Id.* at pp. 344-45.  But Mr. Stephens has not questioned the fact that he was the person convicted in Case No. CF-86-362.  As a result, he cannot show prejudice from his attorney's limited stipulation regarding the prior conviction.[40]

C.    Remaining Claims

On the remaining claims of ineffective assistance of counsel, the Court should find a lack of prejudice.

As discussed above, the Court should separately conclude that:

---

[40]    *See Smith v. Kaiser*, 951 F.2d 1260, 1991 WL 270047, Westlaw op. at 3 (10th Cir. Dec. 13, 1991) (unpublished op.) (holding that trial counsel's stipulation regarding former convictions was not prejudicial because the habeas petitioner had not challenged the validity of the prior convictions "or the fact that he was the same person convicted in each prior case").

- the evidence had been sufficient to conclude that the Mossberg shotgun could easily be concealed in an automobile even if the weapon had not been shortened[41] and

- the jury instruction on aiding and abetting liability had been proper.[42]

*A fortiori*, the Court cannot find a reasonable probability that the outcome would have been different if defense counsel had objected on these issues.[43]

### III.   Alleged Ineffectiveness of Appellate Counsel

Mr. Stephens believes that his defense counsel should have asserted the same issues in the direct appeal. *See supra* p. 30. But the trial court's handling of the charge involving the Mossberg shotgun, instructions on aiding and abetting liability, consideration of a sentence enhancement, or enforcement of the sequestration rule had not violated state law or the federal constitution. *See supra* pp. 12-16, 18-29. As a result, Mr. Stephens cannot show prejudice from his appellate counsel's alleged omission of these issues in the direct appeal.[44]

---

[41]   *See supra* pp. 13-16.

[42]   *See supra* pp. 27-29.

[43]   *See Massingale v. Cody*, 61 F.3d 916, 1995 WL 434832, Westlaw op. at 1 (10th Cir. July 25, 1995) (unpublished op.) ("[b]ecause there was no error committed by allowing evidence of [the habeas petitioner's] prior record at the sentencing phase of his trial before the jury, it follows *a fortiori* that trial counsel was not ineffective in failing to exclude this evidence" (citation omitted)).

[44]   *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." (citation omitted)).

RECOMMENDATION AND NOTICE OF THE RIGHT TO OBJECT

The Court should deny the Petitioner's request for a writ of habeas corpus.

The Petitioner can object to this report and recommendation.  To do so, Mr. Stephens must file an objection with the Clerk of this Court.  The deadline for objections is August 12, 2009.  *See* W.D. Okla. LCvR 72.1.  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

STATUS OF THE REFERRAL

The referral is terminated.

Entered this 23rd day of July, 2009.

_Robert E. Bacharach_
Robert E. Bacharach
United States Magistrate Judge